CAMPBELL & WILLIAMS
DONALD J. CAMPBELL, ESQ. (1216)
djc@campbellandwilliams.com
J. COLBY WILLIAMS, ESQ. (5549)
jcw@campbellandwilliams.com
700 South Seventh Street
Las Vegas, Nevada 89101
Telephone: (702) 382-5222
Facsimile: (702) 382-0540

PRYOR CASHMAN LLP
Perry M. Amsellem, Esq. (*pro hac vice to be filed*)
pamsellem@pryorcashman.com
Benjamin K. Semel, Esq. (*pro hac vice to be filed*)
bsemel@pryorcashman.com
7 Times Square
New York, New York 10022
Telephone:  (212) 421-4100
Facsimile:  (212) 798-6386

*Attorneys for Plaintiff RKF Retail Holdings, LLC*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| RKF RETAIL HOLDINGS, LLC, a Delaware limited-liability company,<br><br>Plaintiff,<br><br>vs.<br><br>TROPICANA LAS VEGAS, INC., a Nevada Corporation,<br><br>Defendant. | Civil Action No:<br><br>**COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff RKF RETAIL HOLDINGS, LLC ("RKF"), a Delaware limited-liability company, by and through its attorneys, CAMPBELL & WILLIAMS and PRYOR CASHMAN LLP, hereby alleges as follows against Tropicana Las Vegas, Inc. d/b/a Tropicana Las Vegas ("Tropicana"):

1

1. This action arises from flagrant misrepresentations by Tropicana to lure RKF into devoting enormous resources and efforts to develop a large retail space on the Las Vegas Strip. After RKF did so, Tropicana breached its written contract with RKF in a shameless attempt to reap the benefits of RKF's services while avoiding its obligations and failing to pay RKF a dime, much less its commissions valued at millions of dollars. Despite RKF's tireless and exceptional work over more than 19 months to devise, develop and lease Tropicana's space – fruitful efforts that led to Letters of Intent to lease space being exchanged with approximately one hundred prospective quality tenants, including dozens of the top national retailers, food service chains and Fortune 500 companies – Tropicana breached its written contract with RKF, and has sought to deny RKF its earned consideration. Tropicana's misconduct is made all the worse given that RKF even went above and beyond industry custom and practice by giving additional material support and advice to Tropicana whenever Tropicana had difficulties with design, development and finance issues, although such issues were not RKF's contractual responsibility. This dispute is truly an example of "no good deed goes unpunished," as RKF's extraordinary work to turn Tropicana's uncultivated space into a successful development was met with deception and bad faith breach of contract.

**PARTIES**

2. Plaintiff RKF is a Delaware limited-liability company with corporate headquarters at 521 5th Avenue, New York, New York, and is therefore deemed to be a citizen of New York for diversity jurisdiction purposes. RKF has two individual members, each of which are also residents and citizens of New York. RKF also has an office at 6623 Las Vegas Boulevard South, Suite 360, Las Vegas, NV. RKF provides retail leasing, investment sales and consulting services, and is registered in Clark County to do business under the fictitious firm name of

Robert K. Futterman & Associates.

3. Upon information and belief, defendant Tropicana, is a Nevada corporation with a principal place of business at 3801 S. Las Vegas Boulevard, Las Vegas, NV 89109. Tropicana is therefore deemed to be a citizen of Nevada for diversity jurisdiction purposes.

4. This Court has jurisdiction of this action pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) as the defendant resides in this judicial district and a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

**ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

6. In or about August 2011, RKF Executive Vice President Frank Volk ("Volk") corresponded with Tropicana Chairman and CEO Alex Yemenidjian ("Yemenidjian") concerning an approximately 30,000 square foot lot of undeveloped space owned by Tropicana at the intersection of Tropicana and Las Vegas Boulevard (the "Premises").

7. Volk raised with Yemenidjian the idea of developing the Premises into a retail space that would take advantage of the significant pedestrian traffic passing over bridges that connect the Tropicana, MGM Grand and Excalibur casinos. At the time, Yemenidjian expressed that he was considering use of the Premises as a landing pad for a "zip line" recreational activity from the hotel towers, and was also considering building a single tenant restaurant on the Premises.

8. Volk expressed that there was significant profit potential in developing the Premises into retail space, but Yemenidjian replied that he was not interested in developing the Premises at that time, and preferred selling such rights to another entity. Thereupon, RKF

3

procured a buyer that offered Tropicana $20 million for such rights.

9. After reviewing financials concerning the Premises' development potential, Yemenidjian expressed to RKF that he had changed his mind and Tropicana decided not to accept the offer procured by RKF, but to develop the Premises itself -- just as RKF had advised Tropicana to begin with.

10. RKF then worked closely with Yemenidjian and Tropicana to identify conceptual tenants for the Premises, and to find and vet several architectural and design firms in California and Las Vegas. RKF attended dozens of meetings in California and Las Vegas and spent several months assisting Tropicana with these tasks for Tropicana's benefit, yet received no compensation for this work.

11. Yemenidjian informed RKF that Tropicana's Board of Directors had approved a resolution to move forward with architectural plans to develop the Premises into a retail space, with a timeline of breaking ground in the first half of 2014 and completing the development in 2015.

<u>The Agreement</u>

12. RKF and Tropicana then entered into an Exclusive Agency Agreement (the "Agreement"), as of August 29, 2012, for RKF to act as broker to lease the Premises. The Agreement had an initial one-year term, after which it continued "on a month-to-month basis until terminated by either party giving to the other party thirty (30) days written notice."

13. The Agreement provides that in the event that Tropicana decided to "cease its efforts in designing and developing the Premises," then it could terminate the Agreement "provided that this Agreement shall be automatically reinstated for a six (6) month period if, as and when [Tropicana] elects to start the project again within six (6) months after ceasing its efforts."

4

14. The Agreement provides that RKF shall "represent [Tropicana] in marketing for lease of all space in the Premises and use its best efforts to market Premises to prospective tenants consistent with a first class retail shopping mall," and that RKF will in turn earn certain commissions based upon leases executed between Tropicana and prospective tenants.

15. The Agreement provides that Tropicana "reserves the right to reject any and all lease transactions at any time in [its] sole and absolute discretion," and that Tropicana "agrees to cooperate with RKF during the term hereof… make available to RKF all records and documents pertaining to the Premises… and commit no act that obstructs RKF's performance," and also that the parties "agree to operate in a professional and ethical manner at all times."

16. The Agreement provides for RKF's compensation in the form of commissions based upon leases that Tropicana enters into for space on the Premises, and such right to commissions survives even in the event that the Agreement expires or is terminated for any reason other than a default that is noticed and not cured in 30 days.

RKF's Full Performance And Other Work For Tropicana's Benefit

17. RKF immediately began performance under the Agreement. RKF arranged, at its own cost, design of brochures and marketing materials for potential tenants of the Premises. RKF began discussions with potential major anchor tenants, and then the full leasing process. At first, RKF held meetings with Tropicana every two weeks to go over potential tenants and the results of RKF's efforts, and this increased to weekly meetings as the process intensified.

18. RKF negotiated, issued and/or executed Letters of Intent for leases on the Premises with approximately <u>one hundred</u> prospective tenants. Each of these Letters of Intent was reviewed and approved by Tropicana before being sent out to prospective tenants and only after RKF specifically presented the proposal and terms to Tropicana for its approval. RKF also provided benchmark lease drafts to Tropicana, although Tropicana never sent a lease draft for

distribution to any of these prospective tenants with which Letters of Intent had been signed as a result of RKF's services.

19. Outside of the Agreement, based upon Tropicana's representations and requests that it was moving ahead in good faith with development of the Premises, RKF also assisted Tropicana, at its specific request, with numerous activities outside the terms of the Agreement, including the development of complete budgets for the project, including *pro formas* and operating budgets, tenant construction manuals, design, architectural and signage criteria, premises delivery conditions and other materials to assist Tropicana.  These services were all provided by RKF for Tropicana's benefit at its request, with RKF receiving no compensation for this work.

Tropicana's Misrepresentations and Omissions

20. Yemenidjian made material misrepresentations of fact to RKF concerning Tropicana's intentions and preparations to develop the Premises.  Among these were statements made to Frank Volk of RKF before and after the Agreement was signed, to the effect that Tropicana intended to and was moving forward immediately with development and the execution of leases for the Premises, once RKF procured prospective tenants.  Representations to this effect were made at numerous teleconferences and meetings involving Yemenidjian and Volk, including at meetings among the following: on or about May 2, 2012 at 8:00 a.m. at 3330 W. Desert Inn Road  in Las Vegas; on or about June 19, 2012 at 8:00 a.m. at 3330 W. Desert Inn Road  in Las Vegas; on or about July 10, 2012 at 12:30 p.m. at the Tropicana in Las Vegas; on or about August 6, 2012 at 9:00 a.m. at Yemenidjian's office in Las Vegas; on or about August 23, 2012 at 4:00 p.m. via telephone; on or about October 12, 2012 at 2:00 p.m. at the Tropicana in Las Vegas; on or about October 19, 2012 at 9:00 a.m. at the offices of WATG in Irvine, CA; on or about November 2, 2012 at 11:00 a.m. at the Tropicana in Las Vegas; on or about November

6

6, 2012 at 3:00 p.m. at Yemenidjian's office in Las Vegas; on or about November 9, 2012 at 1:30 p.m. via web conference. These misrepresentations were further reflected in the initial drafts of Letters of Intent exchanged with Tropicana for RKF to use with prospective tenants, which listed an estimated possession date for prospective tenants of August 1, 2014.

21.   However, upon information and belief, Tropicana had no intention of immediate development of the Premises, but rather procured RKF's services in marketing and cultivating interest in its potential development by means of fraudulent misrepresentations of fact.

22.   Upon information and belief, in the approximately 19 months between the beginning of the Agreement and Tropicana's improper letter of termination, Tropicana did not take reasonable steps to begin development of the Premises in earnest, including that: (i) Tropicana took no material steps to obtain financing for the development of the Premises; (ii) Tropicana did not form the landlord corporate entity; (iii) Tropicana did not file for a separate parcel number for the Premises; and (iv) Tropicana did not approve a standard lease draft for the Premises.

23.   Yemenidjian also fraudulently concealed certain other facts from RKF, including the fact that Tropicana had an existing contract that precluded Tropicana from leasing space for certain retail purposes. Tropicana knowingly encouraged RKF to spend significant efforts to promote the Premises and issue and/or execute Letters of Intent with many prospective tenants for such retail purposes, while failing to disclose to RKF that Tropicana had an existing contract that would prevent such efforts from coming to fruition.

Tropicana's Improper Termination Of The Agreement Without Notice Or Cause

24.   On March 26, 2014, after approximately 19 months of exemplary performance under the Agreement, and the issuance and/or execution of one hundred Letters of Intent with prospective tenants, Tropicana sent RKF a letter (the "March 26 Letter") claiming to terminate

the Agreement immediately, in breach of the Agreement's clear terms, which forbid any such procedure.

25. Tropicana's March 26 Letter further repudiated Tropicana's obligation to pay RKF commissions under the Agreement based upon the leasing work that RKF had undertaken over the past 19 months, efforts that built Tropicana's project from nothing into a development with one hundred Letters of Intent issued and/or executed with prospective tenants, including major anchor tenants.

## FIRST CAUSE OF ACTION
**(Fraudulent Inducement)**

26. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 of this Complaint as though such allegations were fully set forth herein.

27. Tropicana made misrepresentations of fact as to matters extraneous to the specific terms of the Agreement for the purpose of inducing RKF to enter into the Agreement.

28. Upon information and belief, Tropicana knew and/or believed that these misrepresentations were false, and intended for RKF to rely upon the misrepresentations in consenting to the formation of the Agreement.

29. RKF did justifiably rely upon the misrepresentations in entering into the Agreement, and in its continued performance during and after its initial term.

30. As a proximate cause of Tropicana's fraudulent inducement, Plaintiff has suffered damages in excess of several millions of dollars, the specific amount of which will be proven at trial.

31. Upon information and belief, Tropicana committed the acts alleged herein intentionally, deliberately, fraudulently, maliciously, willfully, wantonly and oppressively. The actions of Tropicana are such as to warrant an award of punitive damages against it in amounts in excess of several millions of dollars.

## SECOND CAUSE OF ACTION
**(Fraudulent Concealment)**

32. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 of this Complaint as though such allegations were fully set forth herein.

33. By reason of the foregoing, Tropicana had a fiduciary relationship and a special relationship with RKF such as would cause a reasonable person in RKF's position to impart special confidence in Tropicana. By reason of this special relationship, Tropicana had an affirmative duty of disclosure to RKF regarding the Agreement and related matters

34. Tropicana should have known, and, upon information and belief, actually knew of that special confidence.

35. RKF reasonably believed that Tropicana would inform RKF of its intention not to develop the Premises on the original timeline, a decision with the potential to prevent all of RKF's significant efforts with respect to leasing the Premises from coming to fruition.

36. Upon information and belief, Tropicana did not inform RKF of its decision not to proceed with timely development of the Premises, but fraudulently concealed this fact.

37. As a proximate cause of Tropicana's fraudulent concealment, Plaintiff has suffered damages in excess of several millions of dollars, the specific amount of which will be proven at trial.

38. Upon information and belief, Tropicana committed the acts alleged herein intentionally, deliberately, fraudulently, maliciously, willfully, wantonly and oppressively. The actions of Tropicana are such as to warrant an award of punitive damages against it in amounts in excess of several millions of dollars.

## THIRD CAUSE OF ACTION
**(Breach of Contract)**

39. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1

9

through 38 of this Complaint as though such allegations were fully set forth herein.

40. Tropicana breached the Agreement by terminating RKF's agency without providing the required 30-day notice.

41. Tropicana breached the Agreement by failing to notify RKF that, upon information and belief, it had effectively ceased or suspended *bona fide* activity in the design development stage of the Premises, including by failing to pursue lenders for the development and failing to follow up so that contracts could be executed based upon the Letters of Intent procured by RKF.

42. Tropicana committed an anticipatory breach of the Agreement by expressly repudiating its obligation to compensate RKF under the Agreement and expressly repudiating its obligation to pay commissions due to RKF under the Agreement based upon leases to prospective tenants.

43. Tropicana's acts above constitute material breaches of the Agreement.

44. As a proximate cause of Tropicana's breaches of the Agreement, Plaintiff has suffered damages in excess of several millions of dollars, the specific amount of which will be proven at trial.

### FOURTH CAUSE OF ACTION
**(Breach of Covenant of Good Faith and Fair Dealing Based In Contract)**

45. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 44 of this Complaint as though such allegations were fully set forth herein.

46. Every contract imposes upon the contracting parties the duty of good faith and fair dealing.

47. As described above, Tropicana performed the Agreement in a manner that is unfair, unfaithful to the purpose of the Agreement, and the justified expectations of RKF were thus denied. Tropicana's actions deliberately contravened the intention and spirit of the Agreement, were not honest in fact, did not observe reasonable commercial standards of fair

10

dealing, and were to the disadvantage of RKF.

48.     As a proximate cause of Tropicana's breaches of the Agreement, Plaintiff has suffered damages in excess of several millions of dollars, the specific amount of which will be proven at trial.

## FIFTH CAUSE OF ACTION
### (Breach of Covenant of Good Faith and Fair Dealing Based In Tort)

49.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 48 of this Complaint as though such allegations were fully set forth herein.

50.     Tropicana is in a fiduciary relationship with RKF as principal to RKF as its agent.

51.     Tropicana is in the superior and entrusted position in its Agreement with RKF. Tropicana has exclusive knowledge and control over development and leasing decisions concerning the Premises as principal.  Tropicana thus has exclusive knowledge and control over whether RKF's efforts as a broker and agent can be brought to fruition.  Tropicana's discretion concerning development direction and timing control the benefits of RKF's performance and thus compensation properly to be due under the Agreement

52.     Tropicana's active misleading of RKF, as well as its concealment of material facts directly affecting the results of RKF's performance, amount to grievous and perfidious misconduct, all in service of reaping the benefits of RKF's efforts without compensation.

53.     As a proximate cause of Tropicana's breaches of the Agreement, Plaintiff has suffered damages in excess of several millions of dollars, the specific amount of which will be proven at trial.

54.     Tropicana's actions were willful, wanton, reckless, and malicious, and further show a complete and deliberate indifference to, and conscious disregard for the rights of the RKF.  RKF is therefore entitled to an award of special, punitive or exemplary damages in an amount to compensate for all of the injury that RKF has suffered and to deter Tropicana and

other organizations and individuals from like conduct in the future.

## SIXTH CAUSE OF ACTION
### (Unjust Enrichment / Quasi-Contract)

55. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 54 of this Complaint as though such allegations were fully set forth herein.

56. As described herein, RKF provided services and resources for Tropicana's benefit that were not a part of the performance contemplated in the Agreement ("RKF Resources").

57. Tropicana has obtained a financial benefit as a result of its wrongful use and possession of said RKF Resources.

58. Tropicana voluntarily accepted the conferred benefit and continues to accept and retain the benefit.

59. Given the foregoing, the circumstances are such that it would be inequitable for the Tropicana to retain any of the aforementioned benefits, including any income earned from such benefits, without paying the value thereof to RKF.

60. As a result, Tropicana has been unjustly enriched.

61. By reason of the foregoing, RKF is entitled to a judgment against Tropicana in an amount to be determined at the time of trial that is, upon information and belief, in excess of several millions of dollars.

62. RKF hereby demands a jury trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant as follows:

A. On its first cause of action against Defendant, judgment in an amount to be proven at trial for compensatory damages with statutory interest thereon and for punitive damages with statutory interest thereon;

B. On its second cause of action against Defendant, judgment in an amount to be

12

proven at trial for compensatory damages with statutory interest thereon and for punitive damages with statutory interest thereon;

  C. On its third cause of action against Defendant, judgment in an amount to be proven at trial for compensatory damages with statutory interest thereon;

  D. On its fourth cause of action against Defendant, judgment in an amount to be proven at trial for compensatory damages with statutory interest thereon;

  E. On its fifth cause of action against Defendant, judgment in an amount to be proven at trial for compensatory damages with statutory interest thereon and for punitive damages with statutory interest thereon;

  F. On its sixth cause of action against Defendant, judgment in an amount to be proven at trial for compensatory damages with statutory interest thereon;

  G. On each of its causes of action, awarding Plaintiff its attorneys' fees and costs in amounts to be established at the time of trial because Plaintiff, as a result of Tropicana's unlawful conduct, has been compelled to retain the services of counsel in order to institute and prosecute these proceedings and to retain expert consultants and witnesses as reasonably necessary to prove its case; and

  H. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

  DATED this 28th day of July, 2014.

        CAMPBELL & WILLIAMS

        By */s/ **J. Colby Williams***
         DONALD J. CAMPBELL, ESQ. (1216)
         J. COLBY WILLIAMS, ESQ. (5549)
         700 South Seventh Street
         Las Vegas, Nevada 89101
         Telephone: (702) 382-5222
         Facsimile: (702) 382-0540

[signature block continued on next page]

Perry M. Amsellem, Esq. (*pro hac vice to be filed*)
Benjamin K. Semel, Esq. (*pro hac vice to be filed*)
PRYOR CASHMAN LLP
7 Times Square
New York, New York 10022
Telephone:  (212) 421-4100
Facsimile:  (212) 798-6386

*Attorneys for Plaintiff*
*RKF Retail Holdings LLC*