# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

RKF RETAIL HOLDINGS, LLC, a Delaware limited liability company,

        Plaintiff,

vs.

TROPICANA LAS VEGAS, INC., a Nevada corporation,

        Defendant

Case Nos. : 2:14-cv-01232-APG-GWF
               2:15-cv-01446-APG-GWF

**ORDER**

**Re: Motion to Compel (ECF No. 85)**

This matter is before the Court on Plaintiff RKF Retail Holdings, LLC's ("RKF") Motion to Compel Defendant Tropicana Las Vegas, Inc. ("Tropicana") to respond to Plaintiff's Fifth Request for Production of Documents (ECF No. 85), filed on March 16, 2017. Defendant Tropicana filed its Opposition (ECF No. 94) on April 7, 2017, and Plaintiff filed its Reply (ECF No. 97) on April 21, 2017. The Court conducted a hearing in this matter on May 5, 2017.

## **BACKGROUND**

RKF filed its action against Tropicana on July 28, 2014. *RKF Retail Holdings, LLC v. Tropicana Las Vegas, Inc.*, Case No. 2:14-cv-01232-APG-GWF, *Complaint* (ECF No. 1). RKF alleged that it entered into an exclusive agency contract with Tropicana in August 2012 pursuant to which RKF would act as Tropicana's broker to lease space in a retail shopping center to be built on Tropicana's hotel-casino premises in Las Vegas. Pursuant to the agency agreement, RKF performed substantial work to market the project and obtain letters of intent from prospective tenants. *Id.* at ¶¶ 12-18. RKF performed other services for Tropicana outside the scope of the agency agreement, including

developing budgets for the project, tenant construction manuals, design, architectural and signage criteria, premises delivery conditions and other materials to assist Tropicana. *Id.* at ¶ 19. RKF alleges that despite allowing RKF to perform services pursuant to the contract, Tropicana "had no intention of immediate development of the Premises, but rather procured RKF's services in marketing and cultivating interest in its potential development by means of fraudulent misrepresentations of fact." *Id.* at ¶ 21. RKF alleges that Tropicana wrongfully terminated the exclusive agency contract on March 26, 2014 and repudiated its obligation to pay RKF commissions based upon the leasing work that it had undertaken. *Id.* at ¶¶ 24-25. Tropicana denied RKF's allegations and asserted in a counter-claim that RKF misrepresented its ability to secure tenants for the proposed shopping center. Tropicana stated that had it known the true extent of RKF's experience and contacts, it would not have hired RKF. *Counterclaim* (ECF No. 10), ¶ 10. On July 29, 2015, RKF filed a separate lawsuit against Eastern Real Estate, LLC, ("Eastern") which alleged that Eastern induced and conspired with Tropicana to terminate RKF's exclusive agency contract so that Tropicana and Eastern could then proceed with the development. *RKF Retail Holdings, Inc. v. Eastern Retail, LLC*, Case No. 2:15-cv-1446-APG-GWF, *Complaint* (ECF No. 1). These two actions were consolidated on May 10, 2016. As of this date, a retail shopping center has not been built, although it may again be in the process of development.

RKF asserts in its motion to compel that Penn Gaming acquired ownership of Tropicana in late August 2015.[1] Before and after the merger, Tropicana provided information about these lawsuits to Penn Gaming, including information regarding reserves that Tropicana had set on the case. On November 14, 2016, RKF served its fifth request for production of documents which seeks "[a]ll documents and communications between Tropicana and Penn Gaming concerning the Litigation, including but not limited to those concerning (i) RKF; (ii) Eastern; (iii) the claims or allegations asserted in the Pleadings; and (iv) any contingency funds considered and/or monies set aside in connection with the Litigation." *Motion* (ECF No. 85), *Exhibit A*. Tropicana objected to this request on the grounds that it is irrelevant, and that the requested documents and information are protected from disclosure by the attorney-client privilege, the work product doctrine, the accountant-client privilege and the common

---

[1]The parties' briefs do not provide the specific date that the acquisition/merger became effective.

interest doctrine. *Id.* at *Exhibit B*. On January 10, 2017, RKF served a subpoena duces tecum on Penn Gaming which commanded it to produce the same documents sought in the request for production to Tropicana. *Id.* at *Exhibit D*. Penn Gaming objected to this subpoena on the same grounds as Tropicana. *Id.* at *Exhibit E*. Tropicana subsequently produced privilege logs on March 10, 2017 listing the allegedly privileged communications between it and Penn Gaming before and after the August 2015 acquisition/merger. *Id.* at *Exhibit C*. Although RKF's motion sought production of communications before and after the August 2015 merger, it has since dropped its demand for post-merger communications.

The privilege logs prepared on behalf of Tropicana and Penn Gaming list (1) the identification numbers of the document, (2) the date the document was sent, (3) the names of the sender(s) and recipient(s), (4) the identities of persons who were sent copies of the document, (5) the privileges claimed, and (6) a description of the document. *Exhibit C*. The descriptions are brief, e.g. "[c]ommunication regarding status of RKF litigation;" "[c]ommunications regarding due diligence requests containing reference to RKF litigation;" or "[c]ommunication regarding due diligence requests containing reference to RKF litigation and various litigation reserves." *Id.* The privilege logs asserted the common interest doctrine and attorney-client privilege, but not the work-product doctrine, as to a significant number of pre-merger documents. The logs also asserted the work-product doctrine in conjunction with the common interest doctrine and attorney-client privilege to other pre-merger documents.

Tropicana and Penn Gaming did not submit any affidavits in response to RKF's motion to compel to further describe the documents or the factual basis for their privilege claims. Tropicana states in its opposition that "relying on the attorney-client privilege and the protection of the common interest doctrine in engaging in such communications, Tropicana and Penn Gaming discussed the status of the litigation and issues relating to the litigation with the understanding that Penn Gaming would be acquiring this new subsidiary along with this litigation." *Opposition* (ECF No. 94), pg. 3. Tropicana's counsel represented at the hearing that the listed documents consist primarily of emails or correspondence between Tropicana's and Penn Gaming's attorneys.

. . .

# DISCUSSION

**1. Attorney-Client Privilege.**

"In a federal action such as this based on diversity of citizenship jurisdiction, state law governs attorney-client privilege claims." *Kandel v. Brother Intern. Corp.*, 683 F.Supp.2d 1076, 1081 (C.D.Cal. 2009) (citing Fed.R.Evid. 501; *Star Editorial, Inc. v. United States District Court for Central District of California (Dangerfield)*, 7 F.3d 856, 859 (9th Cir. 1993); *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 284 (C.D.Cal. 1998)). *See also Elizabeth Retail Properties, LLC v. KeyBank National Assn.*, 2015 WL 6549616, *2 (D.Or. Oct. 28, 2015). Nevada law governs the state law claims and defenses in this action.

Nevada Revised Statute (NRS) § 49.095 states:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications:
>
> 1. Between himself or his representative and his lawyer or his lawyer's representative.
>
> 2. Between his lawyer and the lawyer's representative.
>
> 3. Made for the purpose of facilitating the rendition of professional legal services to the client, by him or his lawyer to a lawyer representing another in a matter of common interest.

The attorney-client privilege is waived when the client voluntarily reveals the confidential communication to a person outside the scope of the attorney-client relationship. *Wardleigh v. Second Judicial Dist. Court*, 111 Nev. 345, 891 P.2d 1180, 1186 (1995); *Manley v. State*, 115 Nev. 114, 979 P.2d 703, 707 (1999). NRS § 49.095.3 extends the protection of the attorney-client privilege to communications between the client's lawyer and a lawyer representing another in a matter of common interest–where the communication is "[m]ade for the purpose of facilitating the rendition of professional legal services to the client." The parties have not cited and the Court has not found a Nevada Supreme Court decision that interprets the scope of this provision in the context of a case such as this.

In *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575 (N.D. Cal. 2007), a case that applied the federal common law of privilege, the court stated:

> The joint defense and common interest doctrines are not privileges in and of themselves. Rather, they constitute exceptions to the rule on waiver where communications are disclosed to third parties. *See United States v.*

> *Bergonzi*, 216 F.R.D. 487, 495-96 (N.D.Cal. 2003) (discussing "the common interest exception to waiver of the attorney-client/work product privilege"). "The common interest privilege . . . applies where (1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Id.* at 495. Of course, since it is an anti-waiver exception, it comes into play only if the communication at issue is privileged in the first instance.

249 F.R.D. at 578.

*Nidec* noted that the protection of the attorney-client privilege under the common interest doctrine is not limited to joint litigation preparation efforts. "'It is applicable whenever parties with common interests join forces for the purpose of obtaining more effective legal assistance.'" *Id.* at 578 (quoting Rice, Attorney-Client Privilege in the United States § 4.36, at 216). The legal assistance, however, must pertain to the matter in which the parties have a joint legal interest, and the communication must be designed to further that specific legal interest. *Id.*

Courts are somewhat divided on whether the disclosure of confidential attorney-client communications to a prospective purchaser or investor is protected from a finding of waiver by the common interest doctrine. A majority of courts have rejected application of the doctrine where the disclosure was made for business purposes rather than for the purpose of pursuing a common legal effort. *Nidec*, 249 F.R.D. at 579 (citing *Libbey Glass, Inc. v. Oneida, Ltd.*, 197 F.R.D. 342, 349 (N.D. Ohio 1999); *Bank Brussels Lambert v. Credit Lyonnais*, 160 F.R.D. 437, 447 (S.D.N.Y. 1995); *Oak Industries v. Zenith Industries*, 1988 WL 79614, at *4 (N.D. Ill. July 27, 1988); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508, 512-13 (D. Conn. 1976)). *Nidec* notes that even if the parties to the disclosure have a common legal interest, the communication at issue must be designed to further that common legal effort. It must be made in the course of formulating a common legal strategy. *Id.* at 579-80 (citing *Libbey Glass*, 197 F.R.D. at 348; *In re Bevill, Bresler & Schulman Asset Mgmt. Corp.*, 805 F.2d 120, 126 (3rd Cir. 1986); *Lectrolarm Custom Systems, Inc. v. Pelco Sales, Inc.*, 212 F.R.D. 567, 572 (E.D.Cal. 2002); and *United States ex rel., Burroughs v. DeNardi Corp.*, 167 F.R.D. 680, 685 (S.D. Cal. 1996)). *See also FSP Stallion 1, LLC v. Luce*, 2010 WL 3895914, at *18–*19 (D.Nev. Sept. 30, 2010) (agreeing that the common interest doctrine does not protect disclosures made for business purposes). State court decisions appear to be in accord with this interpretation. *See Oxy Resources California LLC*

5

*v. Superior Court*, 115 Cal.App.4th 874, 891, 9 Cal.Rptr.3d 621 (2004) ("'[f]or the common interest doctrine to attach, most courts seem to insist that the two parties have in common an interest in securing legal advice related to the same matter—and that the communication was made to advance their shared interest in securing legal advice on that common matter.'") *See also Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 214 (Tenn.App. 2002).

In *Nidec*, the defendant disclosed a "litigation abstract" prepared by its counsel to potential bidders for a majority interest in its corporate stock. In holding that this disclosure was not within the scope of the common interest doctrine, the court stated:

> While the JVC litigation abstract might have been helpful to facilitate the potential commercial transaction, it did not further a common legal strategy in connection with the instant litigation. It was not, for instance, a communication coordinating the defense of this case. Rather, Defendants provided the litigation abstract in order to facilitate TPG fund's and other potential bidders' commercial decision whether to buy the majority share in JVC. Thus, it was designed to further not a joint defense in this litigation, but to further a commercial transaction in which the parties, if anything, have opposing interests. The litigation abstract thus would not qualify for the common interest exception.

*Nidec*, 249 F.R.D. at 580.

In arguing that the disclosure of confidential information to a prospective purchaser is protected by the attorney-client privilege and the common interest doctrine, Tropicana relies on *Hewlett-Packard v. Bausch & Lomb, Inc.*, 115 F.R.D. 308 (N.D.Cal. 1987). (The defendant in *Nidec* also relied on this decision.) The *Hewlett-Packard* court was "concerned about the effect that finding waiver too frequently might have on the sort of business transaction in which defendant and [the prospective purchaser] were involved." 115 F.R.D. at 311. The court stated that a finding of waiver "could make it appreciably more difficult to negotiate sales of businesses and products that arguably involve interests protected by laws relating to intellectual property. Unless it serves some significant interest courts should not create procedural doctrine that restricts communication between buyers and sellers, erects barriers to business deals, and increases the risk that prospective buyers will not have access to important information that could play key roles in assessing the value of the business or products they are considering buying." *Id.* In rejecting this expansive application of the common interest doctrine, the court in *Nidec* stated that it "would remove the common interest doctrine far from its historical

antecedent, the joint defense doctrine." 249 F.R.D. at 580. In rejecting another proposed exception to waiver of the attorney-client privilege, the Ninth Circuit similarly stated:

> If we were to unmoor a privilege from its underlying justification, we would at least be failing to construe the privilege narrowly. *Cf. Univ. of Pa. v. EEOC*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990) (citing *Trammel*, 445 U.S. at 50, 100 S.Ct. 906; *United States v. Bryan*, 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884 (1950). And more likely, we would be creating an entirely new privilege. *In re Qwest Commc'ns Int'l*, 450 F.3d 1179; *Westinghouse*, 951 F.2d at 1425.
>
> It is not beyond our power to create such a privilege. *Univ. of Pa.*, 493 U.S. at 189, 110 S.Ct. 577 (noting that Fed.R.Evid. 501 provides certain flexibility to adopt privilege rules on a case-by-case basis). But as doing so requires balancing competing societal interests in access to evidence and in promoting certain types of communication, the Supreme Court has warned us not to "exercise this authority expansively.' *Id.*; *see also United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). *Put simply, "[t]he balancing of conflicting interests of this type is particularly a legislative function."* Univ. of Pa., 493 U.S. at 189, 110 S.Ct. 577.

*In re Pacific Pictures Corp.*, 679 F.3d 1121, 1127-28 (9th Cir. 2012) (emphasis added).

A majority of federal courts have not adopted *Hewlett-Packard's* expansive application of the common interest doctrine to protect disclosures made primarily for business purposes. There is no indication that the Nevada Supreme Court would interpret NRS § 49.095.3 to protect from waiver disclosures made primarily for business purposes. This Court therefore declines to interpret NRS § 49.095.3 in a manner that is not called for by the statutory language itself, and which is contrary to the majority view regarding the scope of the common interest doctrine.

The burden of proving that the attorney-client privilege applies rests with the party asserting it. *Weil v. Investment/Indicators, Research & Management*, 647 F. 2d 18, 25(9th Cir. 1981); *United States ex rel. Calilung v. Ormat Industries*, 2016 WL 4107682, at *2 (D. Nev. Aug. 1, 2016). "Parties seeking to use the common interest doctrine must in practice demonstrate cooperation in forming a 'common legal strategy' because the doctrine 'does not encompass a joint business strategy which happens to include as one of its elements a concern about litigation.'" *Del Monte Internat'l GMBH v. Ticofrut, S.A.*, 2017 WL 1709784, at *7 (S.D.Fla. May 2, 2017). Tropicana has not shown that the information it provided to Penn Gaming prior to the August 2015 merger was for the purpose of pursuing a common legal strategy. Tropicana has shown only that representatives and lawyers for Tropicana and Penn

Gaming discussed this litigation. This, however, indicates nothing more than that Tropicana provided information about the lawsuit so that Penn Gaming could make a business decision whether to proceed with the acquisition. Tropicana has failed to show that its pre-merger communications with Penn Gaming are protected from disclosure by the attorney-client privilege. RKF's motion to compel will therefore be granted as to those pre-merger documents to which only the attorney-client privilege and common interest doctrine are asserted.

### 2. Work Product Doctrine.

"Unlike the attorney-client privilege, the application of the work product doctrine in diversity cases is determined under federal law." *Kandel*, 683 F.Supp.2d at 1083 (citing *Frontier Refining, Inc. v. Gorman–Rupp, Inc.*, 136 F.3d 695, 702 n. 10 (10th Cir. 1998); *United States Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1987)). *See also Moe v. System Transport, Inc.*, 270 F.R.D. 613, 622 (D.Mont. 2010).

The work product doctrine protects from discovery "documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed.R.Civ.Pro. 26(b)(3)(A). Documents prepared in the ordinary course of business are not protected by the work product doctrine because they would have been created regardless of litigation. *Moe*, 270 F.R.D. at 624 (citing *Heath v. F/V ZOLOTOI*, 221 F.R.D. 545, 549-50 (W.D.Wash. 2004)). One of the primary purposes of the work product doctrine is to prevent one party from exploiting another party's efforts to prepare for litigation. *Kandel*, 683 F.Supp.2d at 1083 (citing *Holmgren v. State Farm Mut. Auto Ins. Co.*, 976 F.2d 573, 576 (9th Cir. 1992); *Admiral Ins. Co. v. United States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)). "The work product doctrine establishes a qualified immunity, rather than a privilege, and the qualification of the immunity is to be determined upon a showing of necessity or good cause. *Id*. The party claiming work product immunity has the burden of proving the applicability of the doctrine. *Id*. at 1083-84 (citing *A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 192 (C.D. Cal. 2006)).

Rule 26(b)(3) distinguishes between ordinary work product and opinion work product. Ordinary work product generally consists of factual material prepared in anticipation of litigation such as a factual statement obtained from a witness. *United States ex rel. Bagley v. TRW, Inc.*, 212 F.R.D. 554, 559

(C.D.Cal. 2003); *Arfa v. Zionist Organization of America*, 2014 WL 815496 (C.D.Cal. March 3, 2014) ("ordinary work product includes 'raw factual information'"). Ordinary work product is discoverable if the requesting party shows a "substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." *Moe*, 270 F.R.D. at 626-27 (quoting Rule 26(b)(3)(A)(ii)). "In contrast, the Court is obligated to 'protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representatives concerning the litigation. Thus, opinion work product is afforded greatest protection, and a party seeking such materials must show that the 'mental impressions are directly at issue in a case and the need for the materials is compelling.'" *Id.* at 627 (quoting *Dion v. Nationwide Mut. Ins. Co.*, 185 F.R.D. 288, 282 (D.Mont. 1998)). *See also Phillips v. C.R. Bard, Inc.*, 290 F.R.D. 615, 634 (D.Nev. 2013).

Also "[u]nlike the attorney-client privilege, attorney work-product protection is not automatically waived upon disclosure to third parties. This is so because 'the purpose of the work product rule is not to protect the evidence from disclosure to the outside world but rather to protect it only from the knowledge of opposing counsel and his client, thereby preventing its use against the lawyer gathering the materials.'" *California Sportfishing Protection Alliance v. Chico Scrap Metal*, 299 F.R.D. 638, 645 (E.D.Cal. 2014) (quoting Wright, Miller, Kane & Marcus, 8 Fed. Prac. & Proc. Civ. § 2024 (3d ed.)). "Accordingly, such disclosure generally 'does not waive the work product immunity unless it has substantially increased the opportunities for potential adversaries to obtain the information.'" *Id. California Sportfishing* also states that the common interest exception is construed more narrowly in the context of the attorney-client privilege than it is in the context of the attorney work product doctrine. *Id.* at 646 (citing *United States v. Am. Tel. and Tel. Co.*, 642 F.2d 1285, 1298-99 (D.C.Cir. 1980) and *McMorgan & Co. v. First California Mortg. Co.*, 931 F.Supp. 703, 709 (N.D.Cal. 1996)). In the work product context, the shared interest may be only financial or commercial in nature. *Id.* (citing *Pecover v. Elec. Arts Inc.*, 2011 WL 6020412, at *2 (N.D.Cal. Dec. 2, 2011)). *Pecover*, in turn, cites *Cellco P'ship v. Nextel Commun., Inc.*, 2004 WL 1542259, at *1 (S.D.N.Y. July 7, 2004). *See also Lennar Mare Island, LLC v. Steadfast Ins. Co.*, 2014 WL 1366252, at *8 (E.D.Cal. April 7, 2014); *Resilient Floor Covering Pension Fund v. Michael's Floor Covering, Inc.*, 2012 WL 3062294, at *6 (N.D.Cal. July 26, 2012).

The protection of the work-product doctrine is not waived if the disclosing party has a reasonable basis to believe that the recipient will keep the disclosed materials confidential and not reveal them to the disclosing party's adversary. *Lennar Mare Island, LLC*, 2014 WL 1366252, at *8. Where the disclosing and receiving parties have a common interest on a particular issue against a common adversary, the recipient is not likely to disclose the work product material to the adversary. *Am. Tel. and Tel. Co.*, 642 F.2d at 1299. If the disclosure is made under a written guarantee of confidentiality, then the case against waiver is even stronger. *Id.* at 1299-1300; *Lennar Mare Island,* at *8; *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 237 (N.D.Ill. 2000). The absence of a written agreement, however, does not require a finding of waiver. So long as the parties exchanging information do not act in a manner that is inconsistent with the doctrine's purpose, the work product privilege will be preserved. *Bryan Corp. v. Chemwerth, Inc.*, 296 F.R.D. 31, 40 (D.Mass. 2013).

Penn Gaming had an interest at the time it received the information in preserving its confidentiality because it would, directly or indirectly, assume Tropicana's potential liability if the merger went through. Post-merger, Penn Gaming had even more incentive to preserve the confidentiality of the information. There is no evidence that Penn Gaming disclosed the information to any other persons either before or after the merger. Therefore, Tropicana did not waive its work product protection by providing information about the litigation to Penn Gaming prior to the August 2015 merger.

RKF argues in its reply brief that Tropicana has failed to show that the withheld documents contain protected work product. *See Reply* (ECF No. 97), pgs 3-5. Rule 26(b)(5)(A) states that the party asserting the work product doctrine "must '(i) expressly make the claim; and (ii) describe the nature of the documents, communications or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected will enable the other party to assess the claim.'" Compliance with Rule 26(b)(5)(A) is usually accomplished by providing a privilege log. The privilege log must provide adequate descriptions of the document and the basis for claiming the privilege. A privilege log that merely states that the document contains privileged analysis and reflects advice of counsel is vague and generic and does not allow the court or the opposing party to adequately assess the claim of privilege. *RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 218 (N.D.Ill. 2013).

However, "[p]rivilege logs do not need to be precise to the point of pedantry." *Bryan Corp.*, 296 F.R.D. at 41. In *Feld v. Fireman's Fund Ins. Co.*, 991 F.Supp.2d 242, 248 (D.D.C. 2013), the court provided examples of privilege log entries that fully meet the disclosing party's obligation under Rule 26(b)(5)(A)(ii).[2] Based on the privilege log's specific and individualized descriptions of the documents, the court was "hard pressed to see how [plaintiff] could have provided more information about the documents 'without revealing information itself privileged or protected.'" *Id*. at 248. It may be necessary to supplement the privilege log with affidavits or declarations. *Diamond State Ins. Co. v. Rebel Oil Co., Inc.*, 157 F.R.D. 691, 699 (D.Nev. 1994) (noting that a privilege log is often inadequate to conduct the necessary analysis). The obligation to produce affidavits to support the assertion of privilege should be limited to the elements of the privilege that are challenged by the withholding party's opponent and not adequately addressed in the log. *C.R. Bard, Inc.*, 290 F.R.D. at 637 (citing *SEC v. Beacon Hill Asset Mgmt., LLC*, 231 F.R.D. 134 (S.D.N.Y 2004)).

The descriptions in Penn Gaming's and Tropicana's privilege logs are significantly less detailed than those in *Feld*. Although the logs may be deficient in adequately describing the allegedly protected documents, the Court will not overrule Tropicana's work product objections and compel production of the documents on this ground. It is undisputed that Tropicana's communications with Penn Gaming related to the pending litigation with RKF. The communications therefore likely fall within the scope of the work product doctrine. RKF's demand for documents was based on Tropicana's alleged waiver of the attorney-client privilege and work product doctrine. Prior to filing the motion, RKF did not request

---

[2]The following examples were cited:

> Email between Fulbright attorneys attaching draft letter to C. Kirk, dated 10/27/009, addressing FFIC questions re: potential conflicts of interest and splitting defense costs, and seeking attorney impressions and conclusions re: same. WP in anticipation of potential litigation with FFIC."

> "Email from Fulbright attorneys to client re: status of Underlying Action, including discovery conference with Magistrate Judge Kay, settlement proposal, depositions. and remaining fact discovery, attaching 1/22/11 letter to Judge Kay and 1/24/11 order re: discovery issues. WP re: Underlying Action.

*Feld*, 991 F.Supp.2d at 248.

that Tropicana or Penn Gaming provide more detailed privilege logs. Nor was its motion to compel based on the alleged inadequacy of the privilege logs.

RKF's chief interest in obtaining the communications between Tropicana and Penn Gaming is the apparent suspicion that they contain admissions by Tropicana regarding the merits of RKF's claims. RKF specifically seeks documents relating to "any contingency funds considered and/or monies set aside in connection with the Litigation." Tropicana argues that such reserve information, even if not protected by the work product doctrine, is irrelevant. The discoverability of reserve information usually arises in insurance bad faith cases. In *Dogra v. Liberty Mutual Fire Ins. Co.*, 2015 WL 5086434, at *2 (D.Nev. Aug. 25, 2015), this Court held that reserve information is discoverable. In reaching this conclusion, the Court quoted *Keefer v. Erie Insurance Exchange*, 2014 WL 901123, at *3 (M.D.Pa. March 7, 2014) as follows:

> Defendant urges the court to prevent discovery of reserve information, arguing that such information is not discoverable in a bad faith claim. "An insurance reserve is a pool of funds allocated to satisfy obligations that may arise under a claim." *Peco Energy Co. v. Insurance Co. of N. Am.,* 852 A.2d 1230, 1232 n. 3 (Pa.Super.Ct. 2004). Pennsylvania law "requires insurance companies to set aside reserves upon notice of potential losses under their policies." *Fidelity & Deposit Co. of Md. v. McColloch,* 168 F.R.D. 516, 525 (E.D.Pa. 1996) (citing 40 P.S. § 71). There is competing treatment of whether reserve information is discoverable in a bad faith lawsuit. Some courts have determined that information related to reserve values is not discoverable. *See, e .g., Kaufman v. Nationwide Mut. Ins. Co.,* Civ. No. 97–cv–1114, 1997 WL 703175, *1 (E.D.Pa.1997) ("[P]rocedure for setting reserves ... is confidential information which a court should not order to be disclosed unless the relevance of the information is clear and disclosure is necessary."). Other courts, however, have found that "reserves, of course, must have some relationship to the insurer's estimation of the insured's potential liability. Otherwise, the setting aside of reserves would serve little, if any purpose." *North River Ins. Co. v. Greater N.Y. Mut. Ins. Co.,* 872 F.Supp. 1411, 1412 (E.D.Pa. 1995). Thus, the amount set aside for reserves "is certainly germane to any analysis [the defendant-insurer] made of" the claim's value and is relevant to the determination of whether the defendant-insurer acted in bad faith in processing the claim. *Id.*
>
> Although the court appreciates the basis of Defendant's resistance, it nevertheless agrees with Plaintiff that the amount of reserve, if any, assigned to Plaintiff's UIM claim should be produced. Since Plaintiff claims that Defendant acted in bad faith during its investigation of Plaintiff's claim, a comparison between the reserve value of the claim and Defendant's actions in processing Plaintiff's claim could shed light on Defendant's liability under the bad faith statute. The reserve amount is, therefore, relevant or could potentially lead to relevant information, and the court will order disclosure of such information.

Other courts have held that reserves set by the insurer in a first party insurance claim are irrelevant. *Imperial Textile Supplies, Inc.*, 2011 WL 1743751, at *4 (D.S.C. May 5, 2011). *See also Spearman Indust. v. St. Paul Fire and Marine Ins. Co.*, 128 F.Supp.2d 1148, 1154 (N.D.Ill 2001).

Reserve information is relevant in an insurance bad faith lawsuit because the insurer has the contractual duty to defend and indemnify its insured, which also encompasses the duty to reasonably evaluate and settle claims within the policy's coverage. No similar duty exists in this case. Any amount that Tropicana set aside for accounting or business purposes to cover a possible award against it is irrelevant to proving its liability or the amount of RKF's damages. In this regard, settlement offers are inadmissible to prove the validity or amount of a disputed claim. Fed.R.Evid. 408(a). If actual settlement offers are inadmissible, then on what basis is a reserve admissible? Outside the insurance bad faith context, the Court perceives none. In any event, the reserves set by Tropicana are protected work product information for which RKF has not demonstrated a substantial need.

## **CONCLUSION**

Tropicana's pre-merger communications with Penn Gaming regarding this litigation are not protected by the attorney-client privilege and the common interest exception to waiver. RKF is therefore entitled to production of documents as to which Tropicana and Penn Gaming have asserted the attorney-client privilege, but not the work product doctrine. Tropicana's pre-merger communications with Penn Gaming as to which it asserts the work product doctrine are protected from discovery. Tropicana and Penn Gaming had a common business or commercial interest with respect to sharing information about the litigation, and the sharing of such information did not reasonably increase the risk that the documents would be disclosed to RKF. An award of expenses to either party pursuant to Rule 37(a)(5) is not warranted. Both sides' positions were supported by reasonable legal and factual arguments, and were therefore substantially justified, albeit unsuccessful. Accordingly,

. . .

. . .

. . .

. . .

. . .

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Defendant Tropicana Las Vegas, Inc. to respond to Plaintiff's Fifth Request for Production of Documents (ECF No. 85) is **granted**, in part, as follows: Defendant shall produce the pre-merger documents identified in the privilege logs as withheld on the basis of the attorney-client privilege and common interest doctrine within fourteen (14) days of the filing of this order, unless a timely objection to this order is filed. Defendant is not required to produce documents withheld on the basis of the work product doctrine and common interest doctrine.

DATED this 25th day of May, 2017.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge