# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

* * *

| | |
|---|---|
| RKF RETAIL HOLDINGS, LLC, | Case No. 2:14-cv-01232-APG-GWF |
| Plaintiff, | Consolidated with: 2:15-cv-01446-APG-GWF |
| v. | **ORDER GRANTING THE DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT** |
| TROPICANA LAS VEGAS, INC., | |
| Defendant. | (ECF Nos. 108, 110) |
| RKF RETAIL HOLDINGS, LLC, | |
| Plaintiff, | |
| v. | |
| EASTERN REAL ESTATE, LLC, | |
| Defendant. | |

Plaintiff RKF Retail Holdings, LLC worked as a broker for defendant Tropicana Las Vegas, Inc. in relation to a proposed retail shopping mall on Tropicana's property. When things were not proceeding as planned, Tropicana approached defendant Eastern Real Estate, LLC about becoming a joint venture partner with Tropicana. Shortly thereafter, Tropicana terminated the exclusive broker agreement it had with RKF. RKF contends Tropicana did so to deprive RKF of its commissions and that Eastern tortiously interfered with RKF's broker contract in order to obtain those commissions for itself.

Tropicana asserts that it terminated the agreement lawfully, both by giving written notice and for cause because RKF failed to inform Tropicana about interested tenants and acted unprofessionally toward prospective tenants and their agents. Eastern contends it did not interfere with RKF's relationship with Tropicana because Tropicana had already decided to terminate RKF on its own. As it turns out, Eastern and Tropicana never agreed to a joint venture, no leases with any prospective tenants were ever signed, and the shopping mall was never built.

RKF sues Tropicana for breach of the broker agreement, breach of the covenant of good faith and fair dealing, fraudulent inducement, fraudulent concealment, and unjust enrichment. RKF also sues Eastern for tortious interference with contractual relations and aiding and abetting a breach of fiduciary duty.[1] Tropicana and Eastern move for summary judgment on all claims.

The parties are familiar with the facts and I will not repeat them here except where necessary for context. I grant the defendants' motions.

**I. ANALYSIS**

Summary judgment is appropriate if the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 531 (9th Cir. 2000). I view the evidence and reasonable inferences in the light most favorable to the non-moving party. *James River Ins. Co. v. Hebert Schenk, P.C.*, 523 F.3d 915, 920 (9th Cir. 2008).

**A. Breach of Contract/Breach of the Implied Covenant of Good Faith**

Under Nevada law, the plaintiff in a breach of contract action must show: "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 919-20 (D. Nev. 2006). "The party seeking damages has the burden of proving both the fact of damages and the amount thereof." *Mort Wallin of Lake Tahoe, Inc. v. Commercial Cabinet Co.*, 784 P.2d 954, 955 (Nev. 1989).

---

[1] RKF also asserted a claim against Eastern for tortious interference with prospective business advantage, but that claim was dismissed. ECF Nos. 1 and 37 in 2:15-cv-01446-APG-GWF.

For a breach of contract claim, "compensatory damages are awarded to make the aggrieved party whole and . . . should place the plaintiff in the position he would have been in had the contract not been breached." *Rd. & Highway Builders v. N. Nev. Rebar*, 284 P.3d 377, 382 (Nev. 2012) (quotation omitted); *see also Hilton Hotels Corp. v. Butch Lewis Prods., Inc.*, 862 P.2d 1207, 1209 (Nev. 1993) (stating the remedy for a breach of the contractual covenant of good faith and fair dealing "generally is on the contract itself" (quotation omitted)). "This includes awards for lost profits or expectancy damages." *Rd. & Highway Builders*, 284 P.3d at 382.

Where a broker like RKF seeks to be paid for commissions under an agreement, the broker's "right . . . to compensation must be governed by that agreement." *Nollner v. Thomas*, 533 P.2d 478, 480-81 (Nev. 1975). If the agreement's conditions for earning or paying a commission are not satisfied, then the broker is not entitled to the commission absent bad faith conduct by the other party that prevents those conditions from being satisfied. *See Redfield v. Estate of Redfield*, 692 P.2d 1294, 1296 (Nev. 1985); *Bartsas Realty, Inc. v. Leverton*, 409 P.2d 627, 630 (1966); *Evans v. Dorman*, 402 P.2d 652, 654 (Nev. 1965).

For example, in *Caldwell v. Consolidated Realty and Management Company*, the owner of a bar entered into an exclusive multiple listing agreement with Consolidated Realty and Management Company. 668 P.2d 284, 285 (Nev. 1983). The listing agreement expired on December 14, 1979, but it contained an extension clause requiring payment of a commission to Consolidated if within 45 days after the expiration date Consolidated secured the purchase of the bar.[2] *Id.* at 285, 287. During the listing agreement's term, Consolidated introduced a prospective buyer to the bar owner but no agreement was reached by December 14 or within 45 days thereafter. *Id.* About two weeks after the extension period ended, the buyer made a purchase offer directly to the bar owner and the owner accepted. *Id.*

Consolidated sued for its commission. *Id.* The district court concluded that Consolidated was entitled to a commission as the broker who procured a ready, willing, and able buyer during

---

[2] The Supreme Court of Nevada interpreted the agreement to require the broker to secure a purchase during the listing term, not just to locate a purchaser who later bought the property no matter when the sale was actually consummated. 668 P.2d at 287.

the agreement's term, even though the actual sale took place after the agreement and its extension period expired. *Id.* at 286. The Supreme Court of Nevada reversed, concluding that because the sale did not take place during the term of the agreement, nor was there evidence that the buyer was "ready, willing, and able to consummate the transaction on terms acceptable to the seller" during the listing agreement's term, Consolidated was not entitled to a commission. *Id.* at 287-88.

Here, Tropicana and RKF entered into an "Exclusive Agency Agreement" pursuant to which the parties agreed RKF would have the exclusive right as broker to obtain tenants for the proposed shopping mall. ECF No. 110-1 at 2. The agreement had an initial one-year term starting on September 12, 2012, and thereafter continued "on a month-to-month basis until terminated by either party giving to the other thirty (30) days written notice . . . ." *Id.* Tropicana also had the right to cancel the agreement immediately if it chose to terminate the project, provided that if Tropicana reinstated the project within six months, then the agreement would automatically be reinstated for an additional six months. *Id.* Additionally, Tropicana could terminate the agreement if RKF defaulted and did not cure the default within thirty days after Tropicana gave notice. *Id.* at 4.

The agreement has specific provisions relating to when RKF earns a commission and when Tropicana must pay a commission. Section 6 of the agreement states that RKF's commission "shall be deemed earned upon execution of a lease by and between [Tropicana] and Tenant (the 'Lease') and shall be payable by [Tropicana] to RKF as follows":

- Fifty percent (50%) upon the execution of the Lease, or the first construction draw, whichever is later; and
- Fifty percent (50%) upon Tenant, or its permitted affiliates, successors or assigns, opening for business at the Premises.

*Id.* at 3. Section 7 of the agreement states that "[i]f no Lease shall be executed and exchanged for the Premises, then no Commission shall be deemed earned by RKF and RKF shall not be entitled to any payment from Owner other than as outlined in Paragraph '16' herein." *Id.* RKF does not assert that it is entitled to anything under Paragraph 16.

////

Upon termination, RKF had the right to submit a list of prospective tenants for whom it could claim commissions if the tenant either (1) visited the property and expressed an interest in leasing space or (2) submitted or received a bona fide offer to lease. *Id.* at 6. If Tropicana entered into a lease with any of these prospective tenants within six months after the agreement was terminated, then RKF earned the commission related to that tenant subject to the other terms of the agreement regarding when commissions became payable. *Id.* Additionally, if Tropicana and the prospective tenant were still negotiating in good faith at the end of the initial six-month period, that period would be extended until they either ceased negotiating in good faith or entered into a lease. *Id.* However, if Tropicana terminated the agreement based on an uncured default by RKF, then RKF would not be entitled to any commission after the termination date except any commissions RKF earned prior to termination. *Id.* at 4.

On March 26, 2014, Tropicana sent RKF a termination letter. ECF No. 110-26. Tropicana invoked the provision that allowed either party to terminate with thirty days' notice once the initial one-year term had expired. *Id.* at 2. Tropicana also terminated the agreement due to what it believed were RKF's defaults. *Id.* Based on this justification, Tropicana asserted it was terminating the agreement "effective immediately." *Id.* Tropicana contended that no thirty-day cure period applied because the identified defaults were not "susceptible of cure and have caused [Tropicana] irreversible harm." *Id.* at 2-3. Tropicana stated that because it was terminating for default, it would "not consider any Prospective Tenant Lists." *Id.* at 3.

RKF contends Tropicana breached the agreement and the implied good faith covenant by (1) purporting to terminate under the termination-with-notice clause because it did not give thirty days' notice, (2) purporting to terminate for default when RKF did not default and Tropicana did not give thirty days to cure any default, (3) unreasonably refusing to sign leases, and (4) terminating the agreement in bad faith in an attempt to deprive RKF of commissions. But even assuming Tropicana breached the agreement, RKF cannot show damages because Tropicana's duty to pay RKF a commission has never been, and will never be, triggered. Tropicana does not owe RKF the first fifty percent of a commission until the later of either execution of a lease or the

first construction draw, and it does not owe the remainder until the tenant opens for business. It is undisputed the shopping mall was never built and the entity that acquired Tropicana in August 2015 did not pursue the development. *See* ECF No. 146-12 at 3. There is no evidence of any construction draw or that a construction loan was obtained. Consequently, Tropicana's contractual duty to pay a commission never arose nor will it.

RKF argues Tropicana nevertheless owes commissions because it terminated the agreement in bad faith. But RKF has not shown how Tropicana's bad faith conduct prevented the conditions for payment from being satisfied. The construction draw condition will never be satisfied because the shopping mall project was discontinued, but RKF has not argued or presented evidence that Tropicana terminated the entire project in bad faith. So even if Tropicana terminated the agreement and refused to execute leases in bad faith, RKF cannot show resulting damages because Tropicana had no duty to pay RKF a commission until the first draw on a non-existent construction loan.[3] Indeed, if Tropicana had not terminated the agreement and had executed the leases, it still would not owe payment to RKF because its duty to pay was never triggered. Thus, allowing RKF to recover commissions would put RKF in a better position than if Tropicana had not breached the contract or acted in bad faith. That result is contrary to Nevada law. *See Dalton Props., Inc. v. Jones*, 683 P.2d 30, 31 (Nev. 1984) (stating the "object of compensatory damages in an action for breach of contract is merely to place the injured party in the position that he would have been in had the contract not been breached" and not to put the injured party "in a better position than the terms of the contract allowed"). Because there never was a draw on a loan and the project was never built, and because there is no evidence or argument that Tropicana terminated the entire project in bad faith, RKF has not raised an issue of

---

[3] For the same reasons, RKF's claim for tortious breach of the implied covenant also fails. *See State, Univ. & Cmty. Coll. Sys. v. Sutton*, 103 P.3d 8, 19 (Nev. 2004) (en banc) (stating a plaintiff asserting a claim for tortious breach of the covenant "is entitled to compensation for all of the natural and probable consequences of the wrong").

fact as to damages for a breach of contract or breach of the implied covenant of good faith and fair dealing.[4]

RKF suggests an alternative measure of damages based on the lost opportunities that RKF could have pursued during the time it represented Tropicana. However, RKF does not present non-speculative evidence raising a genuine issue of fact on this damages theory. Although the party seeking damages need not establish those damages "with mathematical exactitude," "there must be an evidentiary basis for determining a reasonably accurate amount of damages." *Mort Wallin of Lake Tahoe, Inc.*, 784 P.2d at 955. Testimony on the amount of damages sustained "may not be speculative." *Clark Cty. Sch. Dist. v. Richardson Const., Inc.*, 168 P.3d 87, 97 (Nev. 2007).

RKF primarily relies on the testimony of its employee Frank Volk. But Volk could not identify what projects RKF could have worked on or how much RKF would have earned on those projects. *See, e.g.*, ECF Nos. 110-6 at 11-14 (Volk's testimony that RKF had not contacted brokers and asked how much they made leasing out alternative projects and RKF was not relying on the commissions of any specific projects to support the damages calculation in this case); 137-6 at 36 (Volk's testimony that he did not know when the broker for an MGM project was hired and thus could not say whether his work on Tropicana's project impacted his chances of being hired); 138 at 11 (Volk declaration stating that because he devoted time to Tropicana, RKF lost other opportunities without identifying those opportunities or quantifying damages); 139 at 7, 16-17 (declaration of RKF's chief financial officer and chief operating officer Michael Flood, also stating RKF lost opportunities without identifying those opportunities and without quantifying the

---

[4] As a result, RKF's reliance on its undisclosed expert's preliminary report (ECF No. 79-2), which proposes this theory of expectancy damages, does not raise an issue of fact. Additionally, RKF relies on calculations that Eastern performed shortly after RKF's termination regarding how much RKF would be due in commissions. However, those calculations were prepared at a time when Tropicana was still pursuing the project. The fact that Eastern and Tropicana contemplated paying RKF commissions if the project was built does not alter the fact that the project was not built and Tropicana's duty to pay was never triggered. Finally, RKF's reliance on Judge Jones' prior order is misplaced. *See* ECF No. 37 at 8 in 2:15-cv-01446-APG-GWF (stating RKF "should have an opportunity to prove damages at trial"). Judge Jones was resolving a motion for judgment on the pleadings, not summary judgment.

losses). Apparently, some of the projects to which Volk was referring also were never built. ECF Nos. 110-9 at 23-24; 110-34 at 11-12; 137-6 at 37. RKF has failed to identify non-speculative evidence from which a reasonable jury could calculate a damage award based on alleged lost opportunities.[5] Consequently, RKF has failed to raise a genuine dispute on a material element of its breach of contract and breach of the implied covenant claims.[6] I therefore grant Tropicana's motion for summary judgment on RKF's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

### B. Tortious Interference and Aiding and Abetting a Breach of Fiduciary Duty

For these same reasons, RKF cannot show damages arising out of its claims for tortious interference with contractual relations and aiding and abetting a breach of fiduciary duty against Eastern. *See In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (stating as an element of aiding and abetting a breach of fiduciary duty that "the breach of the fiduciary relationship resulted in damages"); *J.J. Indus., LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003) (stating that an element of a tortious interference claim is damages resulting from disruption of the contract). I therefore grant Eastern's summary judgment motion.

### C. Fraudulent Inducement

RKF concedes it has no evidentiary basis for its fraudulent inducement claim at this stage of the proceedings. ECF No. 140 at 43 n.17. I therefore grant Tropicana's motion for summary judgment on this claim.

/ / / /

---

[5] RKF's undisclosed expert's preliminary report also does not raise an issue of fact because the expert did not attempt to quantify this category of damages. ECF No. 79-2 at 5.

[6] Although it is not particularly clear from the parties' briefs, it does not appear that RKF contends its other two damages theories apply to its breach of contract and breach of the implied covenant claims. The first of those theories is that Tropicana should have to pay RKF's overhead for its Las Vegas office for the approximately two and half years RKF worked on the project. The contract does not contemplate payment of overhead nor has RKF explained why this would be a proper measure of damages for any of the alleged breaches. Indeed, RKF did not respond at all to Tropicana's challenge to this measure of damages. The second theory relates to charging an hourly rate for work RKF performed. As discussed below, RKF does not present non-speculative evidence in support of a damage theory based on hours expended.

## D. Fraudulent Concealment

Under Nevada law, a plaintiff asserting a fraudulent concealment claim must show: (1) the defendant concealed or suppressed a material fact; (2) the defendant was under a duty to disclose the fact to the plaintiff; (3) the defendant "intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, that is, he must have concealed or suppressed the fact for the purpose of inducing the plaintiff to act differently than he would if he knew the fact;" (4) the plaintiff was unaware of the fact and "would not have acted as he did if he had known of the concealed or suppressed fact;" and (5) "as a result of the concealment or suppression of the fact, the plaintiff must have sustained damages." *Nev. Power Co. v. Monsanto Co.*, 891 F. Supp. 1406, 1415 (D. Nev. 1995).

RKF contends Tropicana fraudulently concealed its intention not to develop the project on the original timeline while it told RKF that it intended to "move forward immediately with development and the execution of leases . . . once RKF procured prospective tenants." ECF No. 1 at 6. RKF also asserts Tropicana concealed the fact that an existing contract precluded Tropicana from leasing space for certain purposes. *Id.* at 7. According to RKF, Tropicana concealed that it did not take material steps to obtain financing for the project; that one reason for its inaction was because of liens on the property; that cost estimates were too rough; that there were parking issues; that Tropicana had not made progress in obtaining municipal approvals for pedestrian bridges; and that Tropicana was not executing final leases for tenants RKF had procured.

RKF has not met its burden of pointing to evidence raising a genuine dispute that it suffered damages as a result of the alleged fraudulent concealment. RKF does not identify how many hours its employees expended on activities that they would have foregone had they known the truth.[7] RKF employees did not keep time records for work on the Tropicana project. ECF

---

[7] RKF argues that had it known the truth it would have protected itself, but the evidence it cites does not support that contention in relation to most of the facts allegedly concealed. For example, RKF cites the testimony of James Reding, who stated that if the exclusive broker agreement had never been signed, he would not have dedicated as much time to the project as he did and he would have given "equal consideration to other deals . . . ." ECF No. 137-3 at 9. But the cited evidence does not show that Reding

Nos. 110-6 at 14-15; 110-34 at 18-20. Consequently, when asked how someone could figure out how many hours Volk spent on the project, he responded "And that's a good question. I don't have an answer for that either." ECF No. 110-6 at 15. Flood likewise could not testify at his deposition how many hours RKF estimated its employees spent on the project. ECF No. 110-34 at 20. Thus, RKF has not presented non-speculative evidence of the damages it suffered as a result of Tropicana's alleged fraudulent concealment.

Indeed, in its opposition, RKF does not attempt to quantify damages related to this claim and it appears from the evidence before me that no witness testified to any particular amount of damages or explained how he or she arrived at an amount.[8] As the party seeking damages, RKF has the burden of proving the amount sought, but RKF has not pointed to any evidence on which a jury could ground a damages award based on the number of hours RKF worked due to Tropicana's alleged fraudulent concealment.

To the extent RKF is attempting to claim damages related to lost opportunities to work on other projects, RKF has not presented non-speculative evidence in support of that claim. I therefore grant Tropicana's motion with respect to the fraudulent concealment claim.

**D. Unjust Enrichment**

RKF's unjust enrichment claim is based on the premise that RKF employees performed work outside the parameters of the agreement for which RKF was never compensated. This claim likewise fails because RKF has not presented non-speculative evidence of damages. Because RKF employees did not keep hourly time records and Volk did not testify to any

---

was asked about any particular fact Tropicana allegedly concealed that, had he known the truth, would have caused him to withdraw from or reduce time devoted to the project, or otherwise alter his conduct.

RKF cites to Volk's declaration for the same proposition, but Volk likewise does not explain what RKF would have done differently had it known the truth about most of the alleged undisclosed facts. Volk states that had he known Tropicana's existing contract with Mandara Spa precluded Tropicana from leasing space that would include health and beauty merchandise, he would not have spent time pursuing tenants like CVS and Nordstrom. ECF No. 138 at 12. But Volk does not attempt to quantify how much time he spent on these types of tenants that he would not have had he known the truth.

[8] RKF's undisclosed expert witness also does not offer an opinion on damages tied to any particular fact Tropicana allegedly fraudulently concealed. ECF No. 79-2. To the extent she would assign lost opportunity damages, she makes no attempt to quantify them. *See id.* at 4-5, 13-14.

particular number of hours (or even an estimate or minimum number of hours) he spent on those activities, RKF has no evidence of a non-speculative amount of damages for this claim. *See Asphalt Prod. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995) ("In a case with a quantum meruit or unjust enrichment theory of recovery, the proper measure of damages is the reasonable value of [the] services." (quotation omitted)). I therefore grant Tropicana's motion for summary judgment on this claim.

### E. Rule 56(d)

In its opposition, RKF requests to supplement its briefing under Rule 56(d) following resolution of three discovery issues that were outstanding at the time RKF filed its opposition. Those three issues were: (1) RKF's objections to Magistrate Judge Foley's order denying RKF leave to disclose a damages expert, (2) RKF's motion to compel documents, and (3) the deposition of a representative of the entity that purchased Tropicana after the events at issue in this case. *See* ECF No. 140 at 71.

"Rule 56(d) offers relief to a litigant who, faced with a summary judgment motion, shows the court by affidavit or declaration that 'it cannot present facts essential to justify its opposition.'" *Michelman v. Lincoln Nat'l Life Ins. Co.*, 685 F.3d 887, 899 (9th Cir. 2012) (quoting Rule 56(d)). A party seeking Rule 56(d) relief bears the burden of "proffer[ing] sufficient facts to show that the evidence sought exists, . . . and that it would prevent summary judgment." *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912, 921 (9th Cir. 1996) (internal citation omitted). When confronted with a Rule 56(d) motion, I may "(1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

RKF did not submit an affidavit or declaration in support of its request. It thus has not met its burden of showing what facts further discovery would reveal or that those facts would preclude summary judgment. To the extent RKF has failed to present evidence of its damages— evidence that should be within its own control—additional discovery would not help. I therefore deny the motion.

**F. Tropicana's Counterclaims**

Tropicana asserted counterclaims against RKF for fraudulent inducement, breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and negligence. ECF No. 10. No party moved for judgment with respect to these claims. They therefore remain pending. Consequently, the parties are directed to file a proposed joint pretrial order related to these claims within thirty days from the date of entry of this order.

**II. CONCLUSION**

IT IS THEREFORE ORDERED that defendant Eastern Real Estate, LLC's motion for summary judgment **(ECF No. 108) is GRANTED**.

IT IS FURTHER ORDERED that defendant Tropicana Las Vegas, Inc.'s motion for summary judgment **(ECF No. 110) is GRANTED**.

IT IS FURTHER ORDERED that the parties shall file a proposed joint pretrial order regarding defendant Tropicana Las Vegas, Inc.'s counterclaims within thirty days of entry of this order.

DATED this 13th day of December, 2017.

ANDREW P. GORDON
UNITED STATES DISTRICT JUDGE